UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

IN RE BITTORRENT COPYRIGHT INFRINGEMENT CASES,

      Case No. 12-1188, Malibu Media v. Does 1-34
      Case No. 12-1189, Malibu Media v. Does 1-7
      Case No. 12-1258, AF Holdings v. John Doe
      Case No. 12-1259, Ingenuity 13 v. John Doe
      Case No. 12-1260, Ingenuity 13 v. John Doe
      Case No. 12-1280, Malibu Media v. Does 1-9
      Case No. 12-1281, Patrick Collins v. Does 1-7
      Case No. 12-1341, Third Degree Films v. Does 1-24
      Case No. 12-1342, Malibu Media v. John Does 1-12
      Case No. 12-1398, AF Holdings v. John Doe
      Case No. 12-1493, Malibu Media v. Does 1-4

**ORDER AND OPINION AND REPORT and RECOMMENDATION**

These cases are but a few of the thousands of mass copyright infringement cases filed across the country by purveyors of pornographic films. These actions are filed against "John Doe" defendants accused of using peer-to-peer technology to illegally download copyrighted files from the Internet.

This Order addresses two issues that are presented in all or many of the cases captioned above. First, the Plaintiffs have joined multiple John Doe defendants, some of whom have moved to dismiss or sever for improper joinder. Second, in many of these cases, certain subpoenas were authorized and issued, and there are challenges to the scope of those subpoenas.

I. JOINDER

A. Generally

A number of the John Does have raised the issue of whether it is legally proper for the Plaintiffs to have joined multiple defendants in a single case. The basics of joinder are governed by the Federal Rules of Civil Procedure. Defendants may be joined in a single action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FRCP 20(a)(2). This essentially requires claims asserted against joined parties to be "logically related." *Benitez v American Standard Circuits Inc.*, 678 FSupp2d 745, 769 (ND Ill 2010); *Disparte v Corporate Executive Bd.,* 223 FRD 7, 10 (DDC 2004). This is a flexible test, and courts seek the "broadest possible scope of action." *Lane v Tschetter,* 2007 WL 2007493 at *7 (DDC) (quoting *UMW v Gibbs,* 383 US 715, 724 (1966)).

The purpose of joinder under Rule 20 is "to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it." *West Coast Productions, Inc. v Does 1–5,829,* 275 FRD 9, 15 (DDC 2011) (quoting *M.K. v Tenet,* 216 FRD 133, 137 (DDC 2002)). The two prongs of Rule 20(a) are thus "liberally construed in the interest of convenience and judicial economy … in a manner that will secure the just, speedy, and inexpensive determination of the action." *Spaeth v Michigan State University College of Law,* 845 FSupp2d 48, 53 (DDC 2012) (quoting *Davidson v District of Columbia,* 736 FSupp2d 115, 119 (DDC 2010)). Indeed,

"the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of America v Gibbs,* 383 US 715, 724 (1966).

The breadth of permissive joinder is not unlimited. For example, the fact that defendants allegedly violated the same trademark does not mean that the plaintiff's claim against them arose out of the same transaction or occurrence. *SB Designs v Reebok International Ltd.*, 305 FSupp23d 888 (ND ILL 2004). Compare, *Androphy v Smith & Nephew Inc.*, 31 FSupp2d 620 623 (ND Ill 1998)(same, patent infringement); *Direct TV Inc v Collins*, 244 FRD 408 (SD Ohio 2007)(downloading same encrypted satellite signal not justify joinder where defendants did not act in concert with each other); *Bridgeport Music Inc. v 11C Music*, 202 FRD 229 (DC Tenn 2001)(infringement of copyrighted music); *Golden Scorpio Corp. v Steel Horse Bar & Grill*, 596 FSupp2d 1282 (D Ariz 2009)(joinder not allowed against 12 restaurants using trademark "Steel Horse" in businesses across the country in trademark infringement case, because the acts of infringement were separate and distinct). These cases make clear that alleging the same type of harm is not enough to justify joinder, because each act of infringement is a separate occurrence. There must be more.

Even if joinder is appropriate, Rule 20(b) provides that "[t]he court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." FRCP 20(b).

Misjoinder occurs when the "preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Walgreen Co. v Networks – USA V, Inc.*, 2012 WL

6591810 at *1 (ND Ill); *Disparte,* 223 FRD at 12 (citations omitted); *Malibu Media LLC v John Does 1-14*, 2012 WL 6115653 at *6 (ND Ind). The trial court has broad discretion under the Rules governing joinder and severance. *Chavez v Illinois State Police*, 251 F3d 612, 632 (7th Cir 2001); *Otis Clapp & Son, Inc. v Filmore Vitamin Co.*, 754 F2d 738, 743 (7th Cir 1985). The focus is on judicial economy and avoiding prejudice to the litigants. *Id.*

Federal Rule of Civil Procedure 21 states that "[m]isjoinder of parties is not a ground for dismissing an action" and the court may remedy improper joinder by "drop[ping]" a party and severing the claim against that party. FRCP 21. The remedy for misjoinder therefore creates separate actions containing the same claims against the dropped defendant. *See Bailey v Fulwood,* 780 FSupp2d 20, 26 (DDC 2011); *In re Brand–Name Prescription Drugs Antitrust Litigation,* 264 FSupp2d 1372, 1376 (JPML 2003) ("[S]everance of claims under Rule 21 results in the creation of separate actions.").

Given that joinder and severance are interrelated, courts have read Rule 21 in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party. *Tenet,* 216 FRD at 138; *see also* FRCP 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross claims, counterclaims, or third-party claims."). Consequently, in addition to the two requirements of Rule 20(a)(2), courts also consider whether joinder would prejudice any party or result in needless delay. *See Lane v Tschetter,* 2007 WL 2007493, at *7 (DDC); *Tenet,* 216 FRD at 138.

B. BitTorrent Generally

A better understanding of BitTorrent is needed in order to assess the joinder question.[1] The BitTorrent protocol was developed by the Department of Defense as a means of communication in the event normal communications were disrupted. If Person A wants to communicate with Person B, but the direct link between them has been broken, BitTorrent allows A to communicate with B over the internet by going through others who have their own links to B, so the disrupted direct link does not prevent communication between A and B.

Obviously, BitTorrent has many legitimate purposes. In recent years, however, it has been used for nefarious purposes such as sharing of music and movies and other copyrighted material without regard for copyright laws. Such is the situation in the cases now before the Court, wherein each John Doe defendant is alleged to have used BitTorrent to infringe on the Plaintiffs' copyrights to various adult movies.

As is pertinent here, the process begins with one person who has obtained a copy of a copyrighted movie and wishes to share it. Instead of sharing it directly, this first person – known as the "seeder" – downloads the movie into BitTorrent. In turn, BitTorrent breaks the movie into smaller pieces, often thousands of them. A "tracker," which is a permanent server on the internet that coordinates file distribution, assigns to the movie itself and to each different piece of the movie a unique identifying number,

---

[1] For this Order, I have relied on numerous other courts' explanations of the BitTorrent protocol and the manner in which members of a swarm interact with each other. In particular, I have found particularly helpful Judge Randon's discussion in *Patrick Collins Inc. v John Does 1-21,* 2012 WL 1198040 at 4-5 (ED Mich). The IT staff of the Court has also been extraordinarily helpful. That said, any errors in comprehension or terminology are mine alone.

consisting of dozens of randomly-generated letters and numbers, known as a Hash identifier. The tracker distributes the pieces of the movie to BitTorrent "clients," the term used for BitTorrent once installed on a specific computer. Once this is done, the "seeder" is no longer necessary for the sharing process.

Information about the tracker and the movie is maintained on a "torrent" file. A user who wants to obtain the movie must have BitTorrent installed on his computer. He accesses the torrent file, and BitTorrent automatically connects to the tracker. The tracker responds by providing to the BitTorrent client a list of "peers" who have the various pieces of the movie. The BitTorrent client then connects to those peers and begins downloading pieces of the movie from them. Soon, an entire movie is assembled. Using the Hash identifiers, BitTorrent compares this newly-assembled movie to the original movie to make certain that all the pieces have been received and that all are correct and not corrupted. At that point, the download is complete and the user has a completely viewable copy of the movie.

The people who participate in BitTorrent sharing are called "peers," and cumulatively the peers are referred to as a "swarm." The purpose of a swarm is to share a particular torrent file. Once a client downloads a particular file, the client becomes a peer and hence a member of the swarm. As long as a peer continues to run BitTorrent, sharing continues. A peer need not do anything at all to share with future clients who visit the torrent site; as long as the program is not disabled, his BitTorrent client continually and automatically shares the piece[s] of the movie when so directed by the tracker.

C. DISCUSSION

Courts across the country are divided over the propriety of joining in a single case numerous John Doe defendants, each of whom is alleged to have participated in a single BitTorrent swarm. See cases cited in *Malibu Media v Does 1-14*, 2012 WL 6115653 (ND Ind) at *6; and *Malibu Media LLC v John Does 1-54*, 2012 WL 3030302 (D Col). I have reviewed all of the cases cited by those two courts, as well as many more, and I find most persuasive the cases concluding that joinder is improper under the circumstances presented in the cases now before this Court.

Some of these cases found joinder improper because the complaint contained only allegations that the defendants participated in a common swarm; these courts believed that this was insufficient to support a finding that their alleged conduct arose out of the same transaction, occurrence, or series of transactions or occurrences as Rule 20 requires. See, for example, *Pacific Century International v Does 1-31*, 2012 WL 2129003 at *3(ND Ill).

Other cases in which the complaint included more specific allegations also declined joinder. For example, in *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 at *11 (EDNY), the Court found that the allegations of the complaint were insufficient to show that the anonymous defendants had shared file bits with each other. See also, *SBO Pictures Inc. v Does 1-57*, 2012 WL 1415523 at *2 (D Md) (no joinder where no allegation that any defendant shared file pieces directly with another); *Hard Drive Productions Inc. v Does 1-188*, 809 FSupp2d 1150, 1164 (ND Cal 2011) (no concerted action where no pleading that any particular defendant shared plaintiff's work with any other particular defendant).

Using these cases as a guide, it is apparent that there is no right or wrong answer that applies across the board to all cases. Rather, the propriety of joinder depends on the specific allegations of the complaint and whether those allegations meet Rule 20's requirements that the transactions be logically related, showing that the defendants acted "in concert" with each other, and that there be a common question of law or fact.

In the instant cases, the Complaints each include boilerplate language from Rule 20: the infringements are alleged to have been "part of a series of transactions, involving the exact same torrent file containing ... Plaintiff's copyrighted Works, and was accomplished by the Defendants acting in concert with each other, and … there are common questions of law and fact."

In support of this boilerplate language, the complaints include more specific allegations based on what Plaintiffs' various investigations revealed. Each of the complaints allege as follows. Each Doe installed a BitTorrent client onto his computer and then accessed the torrent file and copied a piece of the Work. On certain dates, each Doe's computer connected to the investigator's computer to transmit a full copy or a part of a file identified by the Hash identifier. The Plaintiff's investigator then "reassembled" the pieces which resulted in a fully playable motion picture identical or substantially similar to the Work. This, says the complaints, shows that each Doe participated in the same swarm and communicated directly with other members of that swarm.

The flaw in this analysis is the final statement. The summary of the investigator's reports (attached to the complaints) reveals that each one of the Does' computers showed exactly the same unique Hash identifier. If that is true, then "reassembly" of all those files could not possibly result in the creation of a full version of the Work. It would

instead result in either 9 copies of the same piece or 9 copies of the entire Work. All it suggests is that (1) at some point in time each Doe's client downloaded the Work or part of the Work and (2) on various dates each Doe's client shared that Work or piece of the Work with the investigator. Hence, the allegations of the complaints, as supplemented by exhibits, are inconsistent with the boilerplate allegation that the Does, or their computers ever communicated *with each other*. At best, this simply amplifies the statement that the Does were part of the same swarm, insufficient to support joinder.

Moreover, the dates on which the Does allegedly downloaded were often weeks or even months apart. In not one of these cases are there 2 Does whose downloads to the investigator occurred on the same date. This further undermines any allegation that the Does acted "in concert." See, *Raw Films, Ltd. v Does 1-32*, 2011 WL 6840590 at *2 (ND Ga).

The exhibits to the Complaints negate any inference that might be drawn from the boilerplate allegations that the Does' acts were part of the same transaction. Instead they show that each Doe defendant's computer communicated via BitTorrent with the investigator's computer on different dates over the course of weeks or months and that at some prior time each of the Does had downloaded the same movie. Despite the boilerplate language, what we have in each case are a number of separate and discrete transactions in which computers owned by various unrelated individuals used the same software to access the same internet file and, at a different time, their computers talked via BitTorrent to the same person. These are no more the "same transactions" than would be the case if a multiple people used credit cards on different dates to buy an identical product from Amazon.com.

But could the claims against these Does be deemed to arise from the same "series of transactions" so that Rule 20 would nonetheless authorize permissive joinder? None of the cases reviewed by the Court would justify such a conclusion, and in fact such a holding would invalidate decades of precedent in patent, copyright and trademark litigation. If the *same* defendant repeatedly infringes, then all of those *acts* of infringement may be joined as a "series." If different *parties* infringe, there is no basis for joinder simply because they infringe the same copyright, patent or trademark.

Even if I were to have concluded that joinder was proper, under Rules 20(b), 21 and 42(b), this Court retains the discretion to sever the claims against the various Doe defendants. See, *In re BitTorrent Cases*, 2012 WL 1570765 at *11 (EDNY), citing *Third Degree Films v Does 1*-131, 2012 WL 692993 at *3 (D Ariz). That discretion is bounded by principles of fundamental fairness and is to be guided with an eye to preventing prejudice to either side. *In re BitTorrent Cases*, 2012 WL 1570765 at *11; *Pacific Century Intern. Ltd. V Does 1-101*, 2011 WL 5117424 at *3. Courts may also consider factors such as the motives of the parties and whether joinder would confuse or complicate the issues. *SBO Pictures v Does 1-3036*, 2011 WL 6002620 at *3.

While there will undoubtedly be some common questions of fact, the common questions are far outweighed by the panoply of individual defenses raised by the Does in these cases. These defenses include challenges to the reliability of the Plaintiffs' investigatory techniques, questions about personal jurisdiction, limits imposed by the First Amendment, lack of computer savvy, and misidentification of the actual peer. These defenses far outweigh the common questions in terms of discovery and presentation of

evidence. There is no question that joinder has necessitated the expenditure of a great deal of judicial resources. As one court has noted,

> It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial ... would be inefficient, chaotic, and expensive. Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross. These difficulties would place tremendous burden on Defendants as well. To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal. Similarly, *pro se* Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost. The court cannot permit a case to proceed in this manner.

*Pacific Century*, 2011 WL 5117424 at *3, cited in *In re BitTorrent Cases*, 2012 WL 1570765 at *12.

In the seven multi-defendant cases in the Peoria Division of the Central District of Illinois, the Plaintiffs paid $2450 in filing fees. In those same seven cases, there are 97 John Doe defendants. Had these cases been filed as single defendant cases, the Plaintiffs would have paid nearly $34,000 in filing fees.[2] 28 USC §1914(a). As one court has noted, this joinder strategy has wrongfully deprived the federal courts of their statutory due. *In re Diet Drugs*, 325 FSupp2d 540, 541-42 (ED Pa 2004), cited in *In re BitTorrent Cases*, 2012 WL 1570765 at *12.

A number of courts in BitTorrent cases have recognized the effect of joinder on the court as well as on the John Doe defendants:

> ... these mass copyright infringement cases have emerged as a strong tool for leveraging settlements—a tool whose efficacy is largely derived from the

---

[2] There are more of these cases pending in the other divisions of this Court, so the actual fiscal impact on this District as a whole is even more substantial.

11

plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*Pacific Century*, 2011 WL 5117424 at *3, cited in *In re BitTorrent Cases*, 2012 WL 1570765 at *12 that has been demonstrated in a number of the cases pending here. For example, in case 12-1188, 24 of the original 34 Does have now been voluntarily dismissed, presumably because they have paid some amount to settle the claim before their names were linked to pornography.

E. Recommendation

For all of these reasons, I conclude that principles of fundamental fairness and judicial economy dictate that permissive joinder not be allowed and that the Plaintiffs' claims against multiple defendants be severed from the first-named remaining[3] defendant. I therefore RECOMMEND that the Plaintiffs claims be dismissed without prejudice as to all defendants *except* one individual John Doe in each case, as shown in the following chart:

| | |
|---|---|
| Case No. 12-1188 Malibu Media v. Does 1-34 | John Doe #1 |
| Case No. 12-1189 Malibu Media v. Does 1-7 | John Doe #4 |
| Case No. 12-1280 Malibu Media v. Does 1-9 | John Doe #2 |
| Case No. 12-1281 Patrick Collins v. Does 1-7 | John Doe #2 |
| Case No. 12-1341 Third Degree Films v. Does 1-24 | John Doe #1 |
| Case No. 12-1342 Malibu Media v. John Does 1-12 | John Doe #1 |
| Case No. 12-1493 Malibu Media v. Does 1-4 | John Doe #1 |

I further recommend that the Plaintiffs above and their counsel be directed that any future actions of a similar nature filed in the Peoria Division of the Central District of Illinois be filed as separate actions against each John Doe.

---

[3] Plaintiffs have settled with many of the John Does, so not every case has a John Doe #1 remaining. The John Does shown in the chart are the lowest-numbered Does remaining in each case.

## II. SCOPE OF SUBPOENAS

In each of these lawsuits, Plaintiffs were unable to identify the alleged infringers in any way other than by their IP addresses. They were therefore sued as John Does. Immediately upon the filing of the complaints, each of the Plaintiffs filed ex parte motions seeking leave to conduct discovery before a Rule 16 conference was held. They asked for issuance of subpoenas to the Internet Service Providers (ISPs) that provided internet service to these John Does. Through these subpoenas, Plaintiffs would be able to learn enough about the identities of the John Does to effect service on them. Subpoenas were authorized. See Order (Doc. #5).

The Order required that the ISP notify its account holders (the John Doe Defendants herein) of the subpoena before it released any information to the Plaintiff. As a result of that notice, a number of the Doe defendants have filed various challenges to the scope of the subpoenas that were authorized to be served on the ISPs. Specifically, the challenge addressed in this Order is based on the underlying purpose of the subpoenas: to enable Plaintiff to learn the identity of the John Does and obtain service of process on them. For that purpose, the Does assert that the release by the ISP of any information other than their names and geographic addresses is unnecessary.

I agree that there is no need for Plaintiffs to obtain a telephone number or an email address or any other information over and above what is needed to effect service of process. Some of the information Plaintiffs sought in their *ex parte* motions clearly exceeded what was necessary for service. Because of the *ex parte* nature of the motions, however, the concerns were not presented to the Court.

To this extent the motions to quash or modify are GRANTED. First, any subpoena issued to a John Doe who has now been dismissed from these cases due to improper joinder is QUASHED. Second, any remaining subpoena for the John Does shown on the chart (p.12) is MODIFIED; it shall command production only of the names and geographic addresses of those remaining John Does.

Finally, I note that some of the subpoenas in the captioned cases were issued months ago. To the extent that information has already been provided by any of the ISPs to any of the Plaintiffs in these cases, those Plaintiffs are ORDERED that their use of information other than name and geographic addresses is prohibited, from the date of this Order forward, until further order of this Court. The Plaintiffs are further ORDERED that the use of any information provided by the IPSs for any purpose other than service of process is prohibited, from the date of this Order forward, until further order of this Court. Finally, the Plaintiffs and their counsel are put on notice that any future subpoenas issued by this Court will be similarly limited, whether in these cases or in newly-filed cases.

Many of the Does have raised other challenges to the scope of the subpoenas or even to whether they should have been issued at all. In light of the ruling above on joinder, it is not necessary to consider those arguments in this Order.

### III. EXTENSIONS OF TIME

Finally, Plaintiffs have moved to extend the time within which they may serve the John Doe Defendants in 12-1188 (Doc. #29); 12-1189 (Doc. #10); 12-1280 (Doc. #23); 12-1281 (doc. #13); 12-1341 (Doc. #8); and 12-1342 (Doc. #10). That is a reasonable request, as service cannot be effected until the ISPs provide Plaintiffs with the names and

addresses of the remaining John Does. The Motions are GRANTED but only as to the remaining Does listed in the chart above (at p.12).

### III. CONCLUSION

As a result of the recommendation to sever, it is recommended that all motions filed by any Doe other than the Does remaining after severance be found MOOT, without prejudice to being re-filed should Plaintiff initiate additional lawsuits. This will result in all Defendants' motions being mooted *except* the Motion to Quash (Doc. #6) filed by John Doe #4 in Case 12-1189. An order on that motion is entered separately this date.

If Plaintiffs decide to re-file their claims against the now-severed Does, those claims shall be filed as new cases in the appropriate Division of the Central District of Illinois. See Local Rule 40.1.

In addition, Plaintiffs' motions for extension of time to serve is GRANTED as stated herein.

IT IS ORDERED:

A. The subpoenas issued to ISPs are *quashed* except as they pertain to the John Does shown in the chart above (p.12).

B. The remaining subpoenas issued to ISPs are *modified* as follows: the only information that may be released by the ISPs to the Plaintiffs is the name and geographic address of the IP account holder as to the John Does shown in the chart above (p.12).

B. Plaintiff shall serve a copy of this Order on the ISPs within 7 days of this date, and the ISPs are ordered to provide a copy of this Order to *all* John Does (not just the John Does shown in the chart) within 7 days thereafter.

C. Within 7 days after receipt of this Order, the ISPs are ordered to make all reasonable attempts to identify the specific John Does shown in the chart above (p.12). Within 14 days thereafter, the ISPs shall provide the name and geographic address of those John Does to the Plaintiff. No information about any of the other John Does shall be disclosed by the ISPs.

D. Within 30 days after receipt of the information from the IPSs as to the remaining Does, Plaintiffs shall effect service of process on the remaining Does.

E. To the extent that Plaintiffs may already have obtained information from ISPs on some of the Does dismissed herein, the Plaintiffs are ORDERED that this information remain confidential and not be used for any purpose other than effecting service of process, from the date of this Order forward.

IT IS FURTHER RECOMMENDED:

A. That the Plaintiffs' claims against all Does *except* those Does identified in the chart (pp.12) above be dismissed without prejudice and

B. That the Clerk terminate all John Doe defendants *except* those Does identified in the chart above.

The Plaintiffs are advised that any objection to or appeal of this Report and Recommendation must be filed in writing with the Clerk within 14 days after service of this Order and Report and Recommendation. Fed.R.Civ.P.72; 29 USC 636 . The John Does are advised that any objection to or appeal of this Order and Report and Recommendation must be filed on or before March 8, 2013.

Failure to object or appeal will constitute a waiver. *Johnson v. Zema Sys. Corp.*, 170 F3d 734, 739 (7th Cir 1999); *Video Views Inc. v Studio 21, Ltd.,* 797 F2d 538 (7th Cir 1986).

ENTERED: February 11, 2013

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE