UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:12-cv-01493-JES-JAG |
| v. | ) | |
| | ) | Honorable James E. Shadid |
| JOHN DOE 1, | ) | Honorable John A. Gorman |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO QUASH SUBPOENA PURSUANT TO FED. R. CIV. P. 45, AND MOTION FOR LEAVE TO PROCEED ANONYMOUSLY PURSUANT TO FED. R. CIV. P. 8**

COMES NOW John Doe 1 (hereinafter "Doe") by and through counsel, and in support of their Motion to Quash, Motion for Leave to Proceed Anonymously, and Motion to Sever, shows the Court as follows:

**I. INTRODUCTION**

Malibu Media is a California film company that owns the copyrights to a large number of pornographic films. Since February of 2012, Malibu Media has filed approximately 482 lawsuits in federal courts across the country, naming hundreds, if not thousands, of John Doe defendants. Certainly, copyright infringement is a legitimate basis for suit, and if many people engage in copyright infringement, many people may be sued. However, the general safeguards developed by federal courts to ensure that defendants get a fair chance to present their defenses always apply, and in cases such as this, where significant questions as to fairness, privacy and due process exist, those safeguards have special importance.

In pursuit of its claim, Malibu filed a motion for expedited discovery prior to a Rule 26(f) conference. Pre-conference discovery is exceptional and granted only upon a showing of good cause. Fed. R. Civ. P. 26(d)(1), 26(b)(1). Good cause for granting such discovery exists where

"the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063 (C.D. Cal. 2009); *accord Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Good cause is lacking when the prejudice that the requested discovery would impose outweighs Plaintiff's need. That prejudice, the likelihood of misidentification, makes such discovery less than reasonable "in light of all of the surrounding circumstances." *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.*, 765 F. Supp. 2d 87, 88-89 (D. Mass. 2011).

Due to the necessarily *ex parte* nature of Plaintiff's motion, Plaintiff faced no adversaries to fully expound on the prejudices that Doe faces as a result of Plaintiff's expedited discovery. In this particular context, the Court must balance "the need to provide injured parties with an [sic] forum in which they may seek redress for grievances" against those of ISP subscribers such as Doe "without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

Numerous courts have acknowledged the predatory reputation of litigation such as the case at bar and the potentially inappropriate procedures being utilized by plaintiffs like Malibu Media to coerce private individuals into settling claims for thousands of dollars rather than face the possibility of public shame.[1]

Doe respectfully requests that this Court enter an order permitting him to proceed anonymously in this matter, if not for the duration then at least through discovery and dispositive motions. No prejudice to Plaintiff will result from such an order, and the privacy and fairness

---

[1] "The risk of inappropriate settlement leverage is enhanced in a case like this involving salacious and graphic sexual content where a defendant may be urged to resolve a matter at an inflated value to avoid disclosure of the content the defendant was accessing." *Raw Films, Ltd. v. Does 1-32*, No. 11-cv-00532JAG, 2011 U.S. Dist. LEXIS 149215, at *6-7 n.5 (E.D. Va. Dec. 29, 2011).

concerns already acknowledged by numerous courts, including those in the Central and Northern Districts of Illinois, would be protected.

Doe also respectfully requests that this Court enter an order quashing the subpoena seeking his information. Plaintiff has obtained an *ex parte* order seeking early discovery for information that will not result in identification of the alleged infringer of Plaintiff's "Works." Doe categorically denies using any BitTorrent program or accessing/viewing Plaintiff's "Works." Obtaining the name and contact information for the person to whom an ISP sends its monthly bill bears no rational relationship to who may have actually wrongfully accessed Plaintiff's copyrighted "Works." Since the subpoena issued to Comcast for Doe's personal identifiers will not reveal the actual alleged infringer, it should be quashed

## II.     ARGUMENT AND CITATION OF AUTHORITY

A.     <u>The Subpoena Seeking The Identities Of Doe Should Be Quashed</u>.

  1.     <u>Doe Has Standing To Challenge The Subpoena To Comcast</u>.

Doe has standing to present this Motion. He is a party to this action, though not yet identified by name. An individual becomes a defendant when sufficiently identified in the complaint, whether by an actual or fictitious name.[8] Even a fictitiously name defendant, who identifies himself as the named party, is fully entitled to defend a claim against him. *Wilson v. Frakes*, 178 Cal. App. 2d 580, 581 (Cal. Ct. App. 1960); *accord Millennium TGA, Inc. v. Doe*, No. 10-cv-05603, 2011 U.S. Dist. LEXIS 94746, at *3-4 (N.D. Ill. Aug. 24, 2011) (noting "the inconsistency of the plaintiff's position that the Doe defendant lacks standing to pursue a motion . . . because it has not been named or served, [while the complainant refers] to the 'Defendant'

---

[8] "The status of parties, whether formal or otherwise, does not depend upon the names by which they are designated, but upon their relation to the controversy involved, its effect upon their interests, and whether judgment is sought against them. When, as here, the cause of action is against them, and substantial relief sought against them, they are real parties in interest." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 30 n.3 (3d Cir. 1985) (quoting *Grosso v. Butte Elec. Ry. Co.*, 217 F. 422, 423 (D. Mont. 1914).

who the plaintiff expressly identifies in the . . . complaint as the person with [a particular] Internet Protocol address . . . .").

"[A] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Ranieri*, 670 F.2d 702, 712 (7th Cir. 1982) (citing *In re Grand Jury*, 619 F.2d 1022, 1027 (3d Cir. 1980)); *accord Special Mkts. Ins. Consultants, Inc. v. Lynch*, Case No. 11 C 9181, 2012 U.S. Dist. LEXIS 61088, at *4-6 (N.D. Ill. May 2, 2012) (movant had standing to move to quash to avoid oppression, embarrassment and undue burden imposed on movant, not on third party subject to subpoena). The subpoena at issue here seeks Doe's personal identifiers, identifies him (by his IP address) and required notice to him pursuant to statute. *See* 47 U.S.C. § 551 (2006). In cases such as this (brought by producers of pornography) a John Doe defendant's privacy interests, even if only minimal, provide him with standing to object to a subpoena. "Parties need only have some personal right or privilege in the information sought to have standing to challenge a subpoena to a third party." *Third Degree Films, Inc. v. Does 1-108*, No. 11-cv-3007, 2012 U.S. Dist. LEXIS 25400 at *8. (Dist. Maryland February 28, 2012). *See also Sunlust, LLC v. John Does 1-75*, 2012 U.S. Dist. LEXIS 121368, at *1-2.

Doe also has standing to move to quash the third-party subpoena as a defendant with an interest in not being subjected to bad faith settlement demands. A party with "sufficient interest to warrant its intervention" has standing to file a motion to quash, "notwithstanding that it is not the party subpoenaed." *Taylor v. Litton Med. Prods., Inc.*, 19 Fed. R. Serv. 2d 1190, 1975 WL 166114, at *3 (D. Mass. Jan. 23, 1975).

In weighing a motion to quash in such cases, the Court must balance "the need to provide the injured part[y] with an [sic] forum in which [it] may seek redress for grievances" against the

need to protect ISP subscribers from the "fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). The Court must consider "the expectation of privacy held by . . . innocent users who may be dragged into the case (for example, because they shared an IP address with an alleged infringer)." *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 179 (D. Mass. 2008). "The privacy interests of innocent third parties weigh heavily against the public's interest in access to court documents." *Third Degree Films*, 2011 U.S. Dist. LEXIS 128030, at *11. Internet "subscribers have a privacy interest created by Congress." *Discount Video Ctr., Inc. v. Does 1-29*, Civ. A. No. 12-10805-NMG, 2012 U.S. Dist. LEXIS 112518, at *15 (D. Mass. Aug. 10, 2012) (citing 47 U.S.C. § 551 (2006)). "Individuals generally possess a reasonable expectation of privacy in their home computers." *United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004). An ISP's ability to access a subscriber's information "cannot be sufficient to extinguish a reasonable expectation of privacy." *United States v. Warshak*, 631 F.3d 266, 286-87 (6th Cir. 2010). Moreover, the Illinois Constitution sets out even broader privacy protections than federal law for those who place their information in the hands of third parties. *See People v. Jackson*, 116 Ill. App. 3d 430, 434, 452 N.E. 2d 85 (Ill. Ct. App. 1983) ("[T]he right to privacy is not waived by placing these records in the hands of a bank. The individual can still legitimately expect that her financial records will not be subject to disclosure.").

   2.   Plaintiff's Subpoena Must Be Quashed Because Plaintiff Has Failed To Show That Obtaining Doe's Name And Address Is "Very Likely" To Positively Identify An Infringer And As Such, Early Discovery Must Be Denied.

Without showing that early discovery is "very likely" to positively identify infringers, it must be denied. *Hard Drive Prods., Inc. v. Does 1-90*, No. C11-03825 HRL, 2012 U.S. Dist. LEXIS 45509, at *6-8. (N.D. Cal.) (March 30, 2012). Plaintiff has failed to provide the Court

5

with any evidence suggesting that it can meet this burden. It is axiomatic that revealing the name of the subscriber to a particular internet service account does not necessarily reveal the identity of an actual infringer. An ISP assigns an identifying number, called an Internet Protocol ("IP") address, to each ISP subscriber (such as Movant) whose computer the ISP connects to the Internet. Compl. ¶ 4; *United States v. Heckenkamp*, 482 F.3d 1142, 1144 n.1 (9th Cir. 2007). Typically, ISPs assign subscribers a dynamic IP address that changes over time. *United States v. Kearney*, 672 F.3d 81, 89 (1st Cir. 2012). An IP address serves to route traffic efficiently through the network.[9] An IP address does not identify the computer being used or its user.[10] Plaintiff has identified only the IP addresses of routers or wireless access points for accounts it alleges were used to infringe its protected work, *not* the infringing parties. ("IP subscribers are not necessarily copyright infringers."); *VPR Internationale v. Does 1-1017*, No. 11-cv-02068-HAB-DGB, 2011 U.S. Dist. LEXIS 64656, at *3 (N.D. Ill. Apr. 29, 2011). "Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect . . . . The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *Id.* at *4; *see also Hard Drive Prods. v. John Doe*, Civ. A. No. 11 CV 8333, 2012 U.S. Dist. LEXIS 89937, at *6 (N.D. Ill. June 26, 2012).[11] Forensics firms often misidentify innocent subscribers as infringers for other reasons, including:

---

[9] *Poweroasis, Inc. v. Wayport, Inc.*, Civ. A. No. 04-12023-RWZ, 2007 U.S. Dist. LEXIS 34356, at *35-38 (D. Mass. May 10, 2007), *vacated on other grounds*, 273 Fed. Appx. 964 (Fed. Cir. 2008).
[10] "IP addresses specify the locations of the source and destination nodes in the topology of the routing system." *IP Address*, Wikipedia, http://en.wikipedia.org/wiki/IP_address (last modified Feb. 26, 2013).
[11] *See also Third Degree Films v. Does 1-3577*, No. C-11-02768 LB, 2011 U.S. Dist. LEXIS 128030, at *10 (N.D. Cal. Dec. 15, 2011) ("[T]he ISP subscribers may not be the individuals who infringed upon Plaintiff's copyright.") (citations omitted); *In re BitTorrent Adult Film Copyright Infringement Cases*, Civ. A. No. 11-3995 (DRH) (GRB), 2012 U.S. Dist. LEXIS 61447, at *8-9 (E.D.N.Y. May 1, 2012) (citations omitted):

> An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones . . . . Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function . . . than to say an individual who pays the telephone bill made a specific telephone call.
>
> Indeed, due to the increasingly popularity of wireless routers, it much less likely. While a decade ago, home wireless networks were nearly non-existent, 61% of US homes now have wireless access . . . . [A] single IP address usually supports multiple computer devices—which unlike traditional telephones can be operated simultaneously by different individuals . . . Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured),

1. IP addresses and timestamps that do not reliably identify the correct party;[12]

2. An ISP subscriber with dynamic IP addressing through its website host shares its IP address with several other subscribers;[13] and

3. Anyone with wireless capability can use a subscriber's Wi-Fi network to access the Internet, giving the impression that it is the subscriber who is engaged in potentially wrongful acts.[14]

### 3. The Risks Of Misidentification, Public Embarrassment and Coersion Weigh In Favor of Quashing The Subpoena.

Any disclosure of information identifying Doe would subject him to a choice between public opprobrium and private blackmail on spurious claims. The "high risk of false positive identifications . . . 'horror stories' of harassing and abusive litigation techniques . . . and the nature of the copyrighted work in this case creates the possibility of undue embarrassment and harm were a Doe defendant's name to be publicly, but erroneously, linked to the illegal downloading of the plaintiff's copyrighted work." *Digital Sin., Inc. v. Does 1-27*, 12 Civ. 3873 (JMF), 2012 U.S. Dist. LEXIS 78832, at *12-13 (S.D.N.Y. June 6, 2012).

In such cases, there is a risk not only of public embarrassment for the misidentified defendant, but also that the innocent defendant may be coerced into an unjust settlement with the plaintiff to prevent the dissemination of publicity surrounding unfounded allegations. The risk of a shakedown is compounded when the claims involve allegations that a defendant downloaded and distributed sexually explicit material. *Patrick Collins, Inc. v. Does 1-4*, 12 Civ. 2962 (HB),

---

neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film.

[12] Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks—or Why My Printer Received a DMCA Takedown Notice*, Proceedings of 3rd USENIX Workshop on Hot Topics in Security, 3 (2008), *available at* http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf; *see also IP address spoofing*, Wikipedia, http://en.wikipedia.org/wiki/IP_address_spoofing (last modified Feb. 27, 2013) (the term IP address "spoofing" refers to creating a forged IP address with the purpose of concealing the user's identity or impersonating another computing system).

[13] *Web hosting service*, Wikipedia, http://en.wikipedia.org/wiki/Web_hosting_service (last modified Mar. 14, 2013).

[14] *See VPR*, 2011 U.S. Dist. LEXIS 64656, at *3 (discussing raid by federal agents on home of IP subscriber falsely linked to downloading child pornography based on information provided by ISP; "Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York).").

2012 U.S. Dist. LEXIS 82253, at *4 (S.D.N.Y. June 12, 2012). "[T]he practical reality of these types of cases—which, as noted, have proliferated across the country—is that almost all end in settlement and few, if any, are resolved on their merits." *Third Degree Films, Inc. v. Does 1-108*, No. DKC 11-3007, 2012 U.S. Dist. LEXIS 59233, at *11-12 (D. Md. Apr. 27, 2012) (citing *SBO Pictures, Inc. v. Does 1-3036*, No. 11-4220 SC, 2011 U.S. Dist. LEXIS 137361, at *10-12 (N.D. Cal. Nov. 30, 2011)).

Plaintiff's request for discovery would violate Doe's reasonable privacy interest and is not justified, in light of the track record in cases such as the instant case in which plaintiffs use such discovery of personal information about ISP subscribers to coerce them into unwarranted settlement payments. *See, e.g.*, *Hard Drive Prods., Inc. v. John Doe*, Civ. A. No. 11 CV 8333, 2012 U.S. Dist. LEXIS 89937, at *9 (N.D. Ill. June 26, 2012) (discussing common litigation tactics employed in mass copyright litigation lawsuits and denying plaintiff "unnecessary, broad, and prejudicial early discovery").

Plaintiff has failed to show that it would be likely to succeed on the merits if the subpoena was not quashed and they were provided with Doe's identifying information. Plaintiff cannot in good faith claim that the requested discovery will identify an actual infringer. Plaintiff respectfully requests that the Court enter an Order vacating or modifying its Order authorizing early discovery and quashing the subpoena issued to Doe's ISP.

B.  Doe Should Be Permitted To Proceed Anonymously Because His Privacy Interests Outweigh The Public's Interest In Knowing His Identity.

If the Court is not inclined to quash the subpoena seeking Doe's information, an order should be entered permitting Doe to proceed anonymously through dispositive motions. There exists a presumption that the identity of parties to litigation is public information. However, that presumption, including the presumption that there would be prejudice to the opposing party from

the concealment, may be rebutted by showing that the harm to the party seeking to proceed anonymously exceeds the likely harm from concealment. *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). The district court has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts by permitting a party to proceed anonymously. *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). "[R]equests for pseudonymity have been granted when anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal nature." *Third Degree Films*, 2011 U.S. Dist. LEXIS 128030, at *11 (citation omitted). "An allegation that an individual illegally downloaded adult entertainment likely goes to [such] matters." *Id.* Anonymity is required to protect Doe's privacy. "Defendants' motions to quash subpoenas for the very purpose of protecting their identifying information . . . should be allowed to proceed anonymously because assessing these preliminary matters without knowing defendants' identities causes plaintiffs no harm." *CineTel Films, Inc. v. Does 1-1,052*, Civil No. JFM 8:11-cv-02438, 2012 U.S. Dist. LEXIS 47701, at *5 n.2 (D. Md. Apr. 4, 2012). Such exceptional circumstances exist in the instant case.

It is noteworthy that both *Doe v. City of Chicago* and *Doe v. Blue Cross & Blue Shield United of Wisconsin*, *supra*, involve an attempt by the *plaintiff* to remain anonymous. A major component of the concern about parties proceeding anonymously involves a concern about plaintiffs attempting to access the federal courts without revealing their identities. In this case, however, it is a *defendant* who wishes to proceed anonymously. In the past year no fewer than three judges in this District have expressly ruled on this issue. *See Malibu Media, LLC v. Reynolds, et al.*, 1:12-cv-6672 [Doc. #51] (Kendall, V.);[15] *Malibu Media, LLC v. John Does 1-*

---

[15] Judge Kendall's Memorandum Opinion and Order is attached hereto as Exhibit A for the Court's convenience.

*37*, 1:12-cv-06674 [Doc. #33] (Feinerman, G.); *Sunlust Pictures, LLC v. Does 1-75*, 2012 U.S. Dist. LEXIS 121368, at *14-15 (Aug. 27, 2012) (Tharp, J.).

Judge Kendall noted that permitting a John Doe defendant to proceed anonymously is especially appropriate where there is an increasing amount of uncertainty as to whether the IP address identified by Malibu Media's investigators actually reflects activity performed by the subscriber to that address.

> Upon balancing the potential embarrassment to Doe 15 and the possibility that Malibu Media could use inappropriate litigation tactics to 'coerce' a settlement, against the public's interest in knowing Doe 15's true identity and the risk of unfair prejudice to Malibu Media, the Court finds that allowing Doe to proceed by pseudonym is, at least at this state of the proceedings, appropriate.

*Malibu Media, LLC v. Reynolds, et al.*, 1:12-cv-6672 [Doc. #51, *13-14] (Kendall, V.).

Judge Tharp noted that these cases involve "matters of a sensitive and highly personal nature," the harm to the public interest in allowing the John Doe defendant to remain anonymous was small, and the plaintiff would not be prejudiced by his ruling. *Sunlust Pictures, LLC v. Does 1-75*, 2012 U.S. Dist. LEXIS 121368, at *14-15 (N.D. Ill.) (Aug. 27, 2012). Judge Tharp also expressly noted that a disputed allegation that a John Doe defendant illegally downloaded (and presumably viewed) pornography fit into the framework of other cases in which anonymous litigation was permitted. *Id.*, citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979). Moreover, as a defendant, a John Doe has not purposely availed himself of the courts, the public's interest in knowing his identity is weaker.

The circumstances pertaining to Doe are exceptional, and he should be permitted to proceed anonymously if the Court is not inclined to quash the subpoena seeking his identity. Allowing Doe to proceed anonymously through discovery and dispositive motions will not prejudice Plaintiff. Doe respectfully requests that the Court enter an Order granting him leave to

proceed anonymously in this case, if not for the duration, then at a minimum through discovery and dispositive motions.

### III. CONCLUSION

Plaintiff has failed to show that early discovery in this matter was permissible or appropriate. A growing number of federal courts, including those in Illinois, have acknowledged the risks in litigation by parties such as Malibu Media which is aimed not at litigating true copyright infringement cases, but rather suing large numbers of John Doe parties, utilizing early discovery processes to obtain the personal identifiers for individuals Plaintiff knows well are not known to be an actual infringer, in order to gather large sums of money in settlements. Plaintiff has failed to show that obtaining Doe's identity will lead to the identity of an actual infringer. As such, early discovery must be denied and the subpoena seeking Doe's identity must be quashed.

WHEREFORE, Defendant John Doe 1 respectfully requests that the Court's Order granting Plaintiff's motion for leave to take expedited discovery concerning John Doe 1 be vacated, and the subpoena issued thereunder by Plaintiff to Comcast be quashed. If the Court is not inclined to grant Defendant's motion to quash, Defendant respectfully requests that the Court enter an Order permitting him to proceed anonymously through dispositive motions.

Respectfully submitted,

/s/ Erin Kathryn Russell
Erin Kathryn Russell

The Russell Firm
233 South Wacker Drive
84th Floor
T: 312-994-2424
F: 312-706-9766
erin@russellfirmchicago.com

CERTIFICATE OF SERVICE

    This is to certify that on March 28, 2013, a copy of the foregoing has been filed with the Clerk of Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

    /s/ Erin Kathryn Russell